Jeremiah did not receive formal notice that he was the purported father until November 2011. The evidence indicates that once he received notice, Jeremiah made attempts to contact Dakota to discuss the pregnancy, which are confirmed by telephone records. A caseworker with the adoption agency testified that Jeremiah had asked her questions about the pregnancy so that he could protect his parental rights.

The county court found that Dakota intentionally hid her pregnancy and the birth of the baby from Jeremiah in an attempt to procedurally bar him from objecting to the adoption. This finding is not appealed by Dakota.

Considering the entire record as presented, we find that competent evidence supports the county court's finding that Jeremiah was excused for not providing financial support during Dakota's pregnancy because of Dakota's actions to not include him in her pregnancy.

## CONCLUSION

The county court's finding that Dakota did not prove by clear and convincing evidence that Jeremiah's consent was not required under § 43-104.22 is well supported by competent evidence. The decision of the county court is affirmed.

Affirmed.

———————————

Carolyn Carlson and Richard Carlson, appellants, v.
Allianz Versicherungs-Aktiengesellschaft and
Does 1 through 50, inclusive, appellees.
___ N.W.2d ___

Filed March 7, 2014.    No. S-13-492.

1.  **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2.  **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.
3.  **Declaratory Judgments: Courts: Jurisdiction: Parties: Waiver.** The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy.

4. **Jurisdiction.** It is fundamental that a court has the power to determine whether it has jurisdiction over the matter before it.

5. **Actions: Parties.** A dismissal based upon a failure to join a necessary party is a dismissal of the action without prejudice.

6. **Courts: Jurisdiction.** In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment at any time during the term in which the court issued it.

7. **Courts: Motions to Vacate: Time.** Neb. Rev. Stat. § 25-2001(1) (Reissue 2008) provides for the exercise of the inherent power to vacate after the end of the term upon a motion filed within 6 months after the entry of the judgment.

8. **Actions: Motions to Vacate: Service of Process.** A proceeding to vacate a judgment on grounds contained in Neb. Rev. Stat. § 25-2001(4) (Reissue 2008) shall be by complaint, and on such complaint, a summons shall issue and be served as in the commencement of an action.

9. **Service of Process.** The methods of service prescribed by the Hague Convention are mandatory where service abroad to a person in a signatory country is required.

10. **Service of Process: Waiver.** Under Neb. Rev. Stat. § 25-516.01 (Reissue 2008), a voluntary appearance is the equivalent to service that waives a defense of insufficient service or process if the party requests general relief from the court on an issue other than sufficiency of service or process, or personal jurisdiction.

11. **Rules of the Supreme Court: Pleadings: Waiver.** Neb. Ct. R. Pldg. § 6-1112(b) explicitly provides that no defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.

12. **Motions to Dismiss: Jurisdiction: Rules of the Supreme Court: Pleadings.** When a motion to dismiss raises a defense under Neb. Ct. R. Pldg. § 6-1112(b)(6) and any combination of § 6-1112(b)(2), (4), and (5), the court should consider dismissal under § 6-1112(b)(2), (4), and (5) first and should consider dismissal under § 6-1112(b)(6) only if it determines that it has jurisdiction and that process and service of process were sufficient.

13. **Equity.** Equitable remedies are generally not available where there exists an adequate remedy at law.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

15. ____. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Thomas G. Sundvold, of Sundvold Law Firm, P.C., L.L.O., and Raymond D. McElfish, of McElfish Law Firm, P.C., L.L.O., for appellants.

Kyle Wallor and Sarah F. Macdissi, of Lamson, Dugan & Murray, L.L.P., for appellee Allianz Versicherungs-Aktiengesellschaft.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

Twenty months after the district court dismissed the appellants' declaratory judgment action against an insurance company for failure to join a necessary party, the appellants filed a complaint to vacate the judgment. The district court sustained the insurance company's motion to dismiss the complaint. Because we conclude that (1) the time for exercise of the district court's inherent power to vacate its judgment had expired, (2) the court lacked jurisdiction to vacate its judgment under Neb. Rev. Stat. § 25-2001(4) (Reissue 2008) due to insufficient service of process on the insurance company, and (3) the court did not err in declining to exercise its equitable power to vacate where the appellants had an adequate remedy at law, we affirm.

## II. BACKGROUND

### 1. Underlying Lawsuit and Bankruptcy Stay

In February 2005, the appellants, Carolyn Carlson and Richard Carlson, were involved in a rollover collision while driving their Chrysler PT Cruiser. The back of Carolyn's seat collapsed during the rollover, and she suffered a cervical fracture and paralysis from the neck down. The Carlsons filed a products liability action against Daimler-Chrysler Corporation in the district court for Lancaster County, Nebraska.

In April 2009, prior to the scheduled trial date, Chrysler LLC sought chapter 11 bankruptcy protection. The bankruptcy court imposed an automatic stay, which stayed the Carlsons' suit.

In May 2009, the Carlsons sought the bankruptcy court's relief from the automatic stay. In their motion, they alleged that the state court proceeding was not connected to and would not interfere with the bankruptcy case and that litigation in the Nebraska state court would not prejudice the interests of

other creditors and interested parties. Old Carco LLC and its affiliated debtors and debtors in possession filed an objection. (Daimler-Chrysler Corporation and Old Carco LLC, formerly known as Chrysler LLC, will be referred to as "Chrysler" in this opinion.) They alleged, among other things, that they did not have "'first-dollar' insurance coverage with respect to costs incurred defending against [the Carlsons'] specific claim" and that Chrysler's estate would be depleted by the litigation of the lawsuit. The bankruptcy court denied the Carlsons' motion.

### 2. Suit Against Allianz

Allianz Versicherungs-Aktiengesellschaft (Allianz), a foreign insurance company, provided insurance to Chrysler. On February 22, 2010, the Carlsons filed a complaint for declaratory relief against Allianz. This suit was also filed in the district court for Lancaster County, Nebraska. The Carlsons alleged that Allianz was an excess insurer obligated to "drop down" and provide "first dollar coverage" to Chrysler because Chrysler, which was partially self-insured, had become insolvent. The Carlsons alleged that Allianz had an immediate duty to defend Chrysler in the underlying products liability action. They requested judicial determination of the duties and obligations of Allianz. The Carlsons filed a praecipe directing the clerk of the court to issue summons for service of process on Allianz in Munich, Germany. Because Allianz is a German entity, the district court entered an order authorizing a service company to effect service of process on Allianz in Germany. Allianz was thereafter served in Germany.

Allianz filed a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) (failure to state claim) and (7) (failure to join necessary party). Allianz argued that Chrysler was a necessary party, but the Carlsons disagreed. The district court overruled the motion. The court reasoned that it could not, as a matter of law, exclude the possibility that the insurance policy contained terms and conditions whereby Chrysler would not be a necessary party to the underlying accident.

### 3. Bankruptcy Confirmation
### Order and Plan Injunction

On April 23, 2010, the bankruptcy court entered an order confirming a second amended joint plan of liquidation of debtors and debtors in possession, as modified. The confirmation order, which had an effective date of April 30, stated in part:

> 30. . . . In addition, as of the Effective Date, the injunction imposed by Section III.E.4 of the Plan (the "Plan Injunction") will be deemed modified solely to the extent necessary to (a) permit Tort Claimants to commence, pursue or continue litigation to pursue applicable insurance, including litigation against the Debtors' insurers, if any ("Insurance Litigation"); and (b) in connection therewith, to name one or more of the Debtors as nominal defendants, with the naming of such nominal defendants and such Insurance Litigation being solely for the purpose of pursuing claims against and collection of payment of proceeds under any such insurance, if any . . . .
>
> 31. Except as described in this paragraph and in paragraph 30 above, the modification of the Plan Injunction in the foregoing paragraph 30 shall not: (a) expand, limit or otherwise impact in any way any rights of any Tort Claimant, the applicable insurer, if any, the Debtors, the Liquidation Trust, the Liquidation Trustee or any other party with respect to any matter; (b) authorize, or be deemed or construed to authorize, any Tort Claimant, the applicable insurer or any other party to seek further relief against the Debtors or the Liquidation Trust or the Liquidation Trustee in any forum outside of the Bankruptcy Court with respect to the Tort Claim; (c) be deemed to modify the Plan Injunction to allow any party to pursue any action, or attempt to enforce any right, against the Debtors, the Liquidation Trust or the Liquidation Trustee (including, but not limited to, seeking (i) reimbursement of any amount, including any deductible amount, defense costs or expenses from the Debtors, the Liquidation Trust or the Liquidation Trustee, (ii) any

discovery from the Debtors, the Liquidation Trust or the Liquidation Trustee with respect to the Debtors' records, personnel, assets and other information related thereto, (iii) to compel the appearance or testimony of any of the Liquidation Trust's employees, officers, managers, agents or other Representatives (in their capacities as such) in the Insurance Litigation or (iv) otherwise to compel the Liquidation Trust's employees, officers, managers, agents or other Representatives or counsel (in their capacities as such) to participate in the Insurance Litigation); or (d) limit the ability of the Debtors or the Liquidation Trust to seek to include Tort Claims asserted in the Chapter 11 Cases in any ADR Procedures in the Bankruptcy Court.

## 4. ALLIANZ' MOTION FOR SUMMARY JUDGMENT

In October 2010, Allianz moved for summary judgment in the suit initiated by the Carlsons against it. On March 8, 2011, the district court entered an order sustaining Allianz' motion. The court examined the insurance policy and reasoned that under its terms, Allianz' "obligation to indemnify Chrysler is only triggered after Chrysler has exhausted its $25 million self[-]insured retention and Chrysler's liability is fixed by entry of final judgment." The court found that the insurance policy and any policy proceeds were part of Chrysler's bankruptcy estate and were subject to the automatic stay. The district court stated, "Assuming *arguendo* the stay does not apply, [Allianz] argues that Chrysler's policy does not provide drop[-]down coverage to the [Carlsons]," and proceeded to engage in an analysis concerning drop-down coverage. The court found that under the terms of the policy, Allianz was an excess liability insurer and was not required to drop down and provide coverage to Chrysler as a partially self-insured entity. The court next addressed Allianz' argument that Chrysler was a necessary party as required by Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 2008). The court determined that Chrysler was a necessary party, reasoning that Allianz would be prejudiced in being forced to litigate the issues without Chrysler.

The court further stated that the Carlsons' "fight clearly appears to be proper in the existing forum of the Bankruptcy Court." Ultimately, the court found that there were no genuine issues of material fact and sustained Allianz' motion for summary judgment.

Following the entry of the March 2011 summary judgment dismissing the suit against Allianz, the Carlsons did not file an appeal within 30 days, file a motion to alter or amend the judgment within 10 days, or file a motion to vacate prior to the end of the court's term.

## 5. Bankruptcy Order

On August 17, 2012, the bankruptcy court entered a "Stipulation and Agreed Order" which granted limited modification of the plan injunction with respect to the Carlsons. The order recognized that the Carlsons had filed suit against Allianz. The order stated that the April 2010 confirmation order had modified the plan injunction to allow a tort claimant to commence or continue litigation to pursue applicable insurance and, in connection therewith, to name one or more of the debtors as nominal defendants. The order then stated:

> Nevertheless, the [Carlsons] have informed the Liquidation Trust that, on account of the Plan Injunction, the Trial Court will not permit the Insurance Litigation to proceed against Allianz . . . absent an order from the Bankruptcy Court modifying the Plan Injunction, to the extent necessary, to permit the Insurance Litigation to proceed.

The bankruptcy debtors (which did not include Allianz) therefore stipulated that the Carlsons could amend the complaint against Allianz to name Chrysler as a nominal defendant, consistent with paragraph 31 of the confirmation order.

## 6. Complaint to Vacate

On November 15, 2012, the Carlsons filed a complaint to vacate the March 2011 summary judgment. They submitted the following "new facts" for the district court's consideration, which were based on the bankruptcy court's August 2012 order: (1) The plan injunction was amended to permit the continued prosecution of the declaratory judgment action against

Allianz and to permit the Carlsons to amend the complaint to name Chrysler as a nominal defendant; (2) the excess policy of Allianz is not the property of Chrysler, and the plan injunction was amended to permit this litigation to proceed against Allianz and its excess insurance policy to determine whether Allianz owes coverage for the loss involving the Carlsons; (3) the self-insured retention of Chrysler has been depleted through payment of claims in the bankruptcy proceeding; and (4) the amendment of the plan injunction allowing this action to proceed against Allianz lifted the automatic stay of the bankruptcy court so that this action can be litigated and decided on its merits.

The Carlsons sought to have the summary judgment vacated under § 25-2001 or under the court's independent equity jurisdiction to allow reinstatement of the case so that the Carlsons could amend the complaint to name Chrysler as a nominal defendant.

Allianz moved to dismiss the Carlsons' complaint to vacate. Allianz alleged that the complaint should be dismissed pursuant to § 6-1112(b)(5) because the Carlsons' service of process violated both Nebraska and international law. The Carlsons had served summons by certified mail on Allianz' attorney in Omaha, Nebraska. Counsel for Allianz submitted an affidavit stating that he is not the registered agent for Allianz and that he has not been authorized to accept, sign for, or receive service of process on Allianz' behalf. Allianz also alleged that dismissal was warranted under § 6-1112(b)(6) for failure to state a claim upon which relief may be granted.

## 7. District Court's Order

The district court entered a 22-page order sustaining Allianz' motion to dismiss. The court reasoned that the plain language of § 25-2001(1) provides for relief within the court's same term or 6 months after entry of the court's own judgment or order, but that the statute "does not provide for relief after a court allegedly 'gains' jurisdiction from an outside court order." The court stated that the August 2012 order provided for relief that the Carlsons possessed at the time of Allianz' summary judgment motion, i.e., naming Chrysler as a nominal

defendant for purposes of pursuing insurance claims. The court concluded that it did not gain anything with the bankruptcy court's August 2012 order, because nothing had changed with regard to the excess policy and the self-insured retention of $25 million, and that thus, the Carlsons could not acquire relief under the inherent powers of the court.

The court determined that the motion to vacate was procedurally defective under § 25-2001(4), because the Carlsons did not issue and serve summons on Allianz. Assuming for the sake of argument that the Carlsons properly served the complaint to vacate on Allianz, the court engaged in a lengthy analysis regarding "newly discovered" evidence and concluded that the Carlsons had not presented any such evidence.

Finally, the court determined that the Carlsons could not avail themselves of the court's independent equity jurisdiction to vacate the summary judgment. The court observed that the Carlsons had not appealed the entry of summary judgment, filed a motion to alter or amend the judgment, filed a motion to vacate the judgment prior to the end of the court's term, or requested to amend their complaint to name Chrysler as a nominal defendant and that their arguments in support of vacating the summary judgment were the same ones made at the time the summary judgment motion was argued and submitted.

The Carlsons timely appealed, and we moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

### III. ASSIGNMENTS OF ERROR

The Carlsons allege, consolidated and restated, that the district court erred by (1) dismissing their complaint to vacate and (2) issuing an advisory opinion regarding drop-down coverage.

### IV. STANDARD OF REVIEW

[1] An appellate court will reverse a decision on a motion to vacate only if the litigant shows that the district court abused its discretion.[2] But this case comes to us on an appeal from

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Johnson v. Johnson*, 282 Neb. 42, 803 N.W.2d 420 (2011).

the district court's sustaining of Allianz' motion to dismiss the complaint to vacate. A district court's grant of a motion to dismiss is reviewed de novo.[3] Because the matter was disposed based upon Allianz' motion to dismiss, we review the issue de novo.

[2] Because the Carlsons do not assign error to the district court's determination that Allianz' motion was not converted to a motion for summary judgment, we do not address that question. In disposing of Allianz' motion to dismiss, the court held a hearing and received evidence. Section 6-1112(b) provides that when matters outside the pleading are presented by the parties and accepted by the trial court with respect to a motion to dismiss under § 6-1112(b)(6), the motion "shall be treated" as a motion for summary judgment as provided in Neb. Rev. Stat. §§ 25-1330 to 25-1336 (Reissue 2008) and the parties shall be given reasonable opportunity to present all material made pertinent to such a motion by statute.[4] We have noted that a court may take judicial notice of matters of public record without converting a § 6-1112(b)(6) motion to dismiss into a motion for summary judgment.[5] The evidence received by the court concerning the § 6-1112(b)(6) motion to dismiss included pleadings and briefs in the instant case, pleadings in the underlying lawsuit, motions and orders in the bankruptcy court, and the Allianz insurance policy. The district court considered the question and concluded that receipt of these materials did not result in a conversion of the motion. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[6] The Carlsons did not assign or argue that the district court erred in this regard. Thus, we do not consider whether the motion to dismiss was transformed into a motion for summary judgment.

---

[3] *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[4] *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

[5] See *id.*

[6] *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

## V. ANALYSIS

Before addressing the Carlsons' assignments of error, we pause to clarify the effect of the March 2011 judgment and ensuing developments.

The critical matter decided by the March 2011 judgment was Chrysler's status as a necessary party to the Carlsons' suit against Allianz. The court recounted that a stay had been imposed by the bankruptcy court, thus barring the commencement or prosecution of an action against Chrysler without an order from the bankruptcy court lifting or modifying the automatic stay. The court observed that the parties disagreed regarding whether Chrysler was a necessary party, with the Carlsons taking the position that Chrysler was not a necessary party. According to the order, the Carlsons argued that Chrysler's interests were wholly protected in its absence by Allianz' presence and that there was no controversy between Allianz and Chrysler in this action because the present lawsuit would not adjudicate any rights between Chrysler and the injured parties. The court determined that Chrysler was a necessary party.

[3-5] The determination that Chrysler was a necessary party was jurisdictional and became a final order dismissing the Carlsons' action without prejudice. The presence of necessary parties in declaratory judgment actions is jurisdictional and cannot be waived, and if such persons are not made parties, then the district court has no jurisdiction to determine the controversy.[7] It is fundamental that a court has the power to determine whether it has jurisdiction over the matter before it.[8] When the district court determined that Chrysler was a necessary party and implicitly determined that the Carlsons were not going to ask to bring Chrysler in as a party (or could not do so because of the bankruptcy stay), dismissal—achieved in this case by sustaining Allianz' motion for summary judgment—was appropriate. This was a final order[9] from which

---

[7] *Dunn v. Daub*, 259 Neb. 559, 611 N.W.2d 97 (2000).

[8] See *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999).

[9] See Neb. Rev. Stat. § 25-1902 (Reissue 2008).

no appeal was taken. And it is clear that a dismissal based upon a failure to join a necessary party is a dismissal of the action without prejudice.[10] Thus, the March 2011 order dismissing the Carlsons' suit against Allianz was a dismissal without prejudice.

Subsequently, the Carlsons obtained explicit permission from the bankruptcy court to bring Chrysler in as a nominal party in this declaratory judgment action against Allianz. But this did not change the situation in effect at the time of the March 2011 judgment.

With this background, we turn to the errors assigned by the Carlsons.

### 1. Dismissal of Complaint to Vacate

#### (a) Inherent Power to Vacate

[6] In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment at any time during the term in which the court issued it.[11] The applicable district court rule provides that the term of the court is the calendar year.[12] Here, the Carlsons' November 2012 complaint sought to vacate the March 2011 judgment. Because the Carlsons did not file their complaint to vacate within the 2011 calendar year, the court lacked the inherent power to vacate the judgment.

[7] The district court's inherent power to vacate the judgment, as extended by statute, had also expired. Section 25-2001(1) provides for the exercise of the inherent power to vacate after the end of the term upon a motion filed within 6 months after the entry of the judgment. Because the judgment was entered in March 2011 and the Carlsons did not file their complaint to vacate until November 2012, the court's inherent power to vacate as extended by § 25-2001(1) had expired.

---

[10] See *Taylor Oil Co. v. Retikis*, 254 Neb. 275, 575 N.W.2d 870 (1998).

[11] *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013).

[12] See Rules of Dist. Ct. of Third Jud. Dist. 3-1 (rev. 1999).

### (b) Vacation of Judgment
### Under § 25-2001(4)

[8] The Carlsons argue that the district court erred in finding that their complaint to vacate was procedurally defective under § 25-2001(4). A proceeding to vacate a judgment on grounds contained in § 25-2001(4) "shall be by complaint," and "[o]n such complaint a summons shall issue and be served as in the commencement of an action."[13] We focus on the requirement for service of process, as it is dispositive of the Carlsons' argument relying upon § 25-2001(4).

[9] At oral argument, counsel for the Carlsons conceded that the complaint to vacate was not properly served under the Hague Convention.[14] The methods of service prescribed by the Hague Convention are mandatory where service abroad to a person in a signatory country is required.[15] Allianz concededly falls within the protection of the Hague Convention. Rather than implementing the procedures prescribed by the Hague Convention, the Carlsons filed a praecipe with their complaint to vacate which directed the clerk of the court to issue summons and deliver it to Allianz' attorney via certified mail at the attorney's Omaha office. By conceding their failure to utilize the Hague Convention's procedures, they acknowledged that their attempt to serve Allianz' Nebraska counsel was not sufficient to comply with § 25-2002. But this does not end our analysis under § 25-2001(4), because the Carlsons argue that Allianz waived the necessity of service of process on the motion to vacate.

In the Carlsons' argument on waiver, they assert that Allianz did so by voluntarily appearing on other issues before the court, and they rely upon our decision in *Doe v. Board of Regents*.[16] Allianz agrees that *Doe* controls, but disputes the Carlsons'

---

[13] Neb. Rev. Stat. § 25-2002 (Reissue 2008).

[14] See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361.

[15] See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988).

[16] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

interpretation of our *Doe* opinion. We therefore summarize our decision in that case.

[10] In *Doe*, John Doe sued the Board of Regents of the University of Nebraska, the University of Nebraska Medical Center (UNMC), and eight UNMC faculty members in each individual's official and individual capacities. Doe served summons at the Attorney General's office. The defendants moved to dismiss under the following subsections of § 6-1112: subsection (b)(1) (lack of jurisdiction), subsection (5) (insufficiency of service), and subsection (6) (failure to state claim). At the hearing on the motion to dismiss, the defendants stated that they were not challenging service on them in their official capacities but that the UNMC faculty members had not been properly served in their individual capacities. Doe argued that the defendants all made voluntary appearances at the hearing on their motion to dismiss. Under Neb. Rev. Stat. § 25-516.01 (Reissue 2008), a voluntary appearance is the equivalent to service that waives a defense of insufficient service or process if the party requests general relief from the court on an issue other than sufficiency of service or process, or personal jurisdiction.[17] We observed that the defendants affirmatively pled insufficiency of service of process under § 6-1112(b)(5) and voluntarily appeared in their individual capacities only to object to the sufficiency of process and that "[w]hile they also moved to dismiss Doe's complaint under other subsections of [§ 6-11]12(b), the defendants, in their official capacities, did not waive a defense or objection by joining one or more other [§ 6-11]12(b) defenses or objections in a responsive motion."[18] We summarized as follows: "[S]tate officials, in their individual capacities, can challenge service while still reserving the right, in their official capacities, to contest a plaintiff's claims on other grounds."[19] Although Allianz was not being sued in more than one capacity, we agree with Allianz' reading of *Doe*.

---

[17] *Id.*

[18] *Id.* at 509, 788 N.W.2d at 280.

[19] *Id.*

[11,12] Allianz did not waive its defense of insufficient service of process under § 6-1112(b)(5) by asserting a defense of failure to state a claim under § 6-1112(b)(6) in the same motion. Section 6-1112(b) explicitly provides that "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." And we have stated that when a motion to dismiss raises a defense under § 6-1112(b)(6) and any combination of § 6-1112(b)(2), (4), and (5), the court should consider dismissal under § 6-1112(b)(2), (4), and (5) first and should consider dismissal under § 6-1112(b)(6) only if it determines that it has jurisdiction and that process and service of process were sufficient.[20] Here, Allianz affirmatively pled insufficiency of service of process under § 6-1112(b)(5) and asked the court during the hearing to "take judicial notice of the court file, specifically with respect to the information in the court file about the service of process of the complaint to vacate [the court's] prior order." We conclude that Allianz did not waive this defense by also offering exhibits and argument in support of its defense that the complaint to vacate on grounds other than under § 25-2001(4) failed to state a claim upon which relief could be granted. Because the Carlsons did not properly serve Allianz under § 25-2002, we do not consider their argument concerning newly discovered evidence under § 25-2001(4).

### (c) Equitable Power to Vacate

[13] The Carlsons claim that the district court could have properly invoked its equity jurisdiction and vacated the March 2011 judgment. But equitable remedies are generally not available where there exists an adequate remedy at law.[21] Following the court's judgment in March 2011, the Carlsons did not (1) appeal the order; (2) move to alter or amend the judgment; (3) move to vacate the judgment on or before December 31, 2011; or (4) request to amend their complaint in order to name Chrysler as a nominal defendant. Further, after obtaining the

---

[20] See *Doe v. Board of Regents, supra* note 16.

[21] *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012).

bankruptcy court's relief from the automatic stay, the Carlsons could have filed a new declaratory judgment action which named Chrysler as a nominal defendant rather than seeking to vacate the March 2011 judgment. Because the Carlsons had an adequate remedy at law, they were not entitled to equitable relief from the judgment.

## 2. Advisory Opinion

[14,15] The Carlsons also argue that the district court improperly issued an advisory opinion and that the court's conclusion that there is no possibility of drop-down coverage until Chrysler's liability is fixed by entry of a final judgment was erroneous. However, a determination of whether the court improperly issued an advisory opinion is not necessary to our adjudication. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[22] Further, this issue was not raised to the district court. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[23] Accordingly, we decline to address this assigned error.

## VI. CONCLUSION

We conclude that the time for exercise of the district court's inherent power to vacate its judgment—both within term and as extended by § 25-2001(1)—had expired. Because the Carlsons did not properly serve Allianz as required by § 25-2002, the court lacked jurisdiction to vacate its judgment under § 25-2001(4). Because the Carlsons had an adequate remedy at law, we find no error in the district court's sustaining of Allianz' motion to dismiss the Carlsons' attempt to invoke the district court's equitable power to vacate. Accordingly, we affirm.

Affirmed.

Miller-Lerman, J., participating on briefs.

---

[22] *Lang v. Howard County, ante* p. 66, 840 N.W.2d 876 (2013).

[23] *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013).