Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/25/2021 08:10 AM CDT

SANITARY IMPROVEMENT DISTRICT NO. 2 OF KNOX
COUNTY, NEBRASKA, ET AL., APPELLEES, V.
JOANN FISCHER ET AL., APPELLANTS.
___ N.W.2d ___

Filed April 2, 2021.    No. S-19-1193.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.
2. **Declaratory Judgments: Parties.** When declaratory relief is sought, it is a statutory requirement that all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
3. **Declaratory Judgments: Courts: Jurisdiction: Parties.** The rule in a declaratory judgment action is that all who have or claim any interest which would be affected by the declaration sought are indispensable parties, and when all such parties have not been joined, the district court has no jurisdiction to determine the controversy.
4. **Declaratory Judgments: Parties: Words and Phrases.** In a declaratory judgment action, a party is "indispensable" when the party has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest.

Appeal from the District Court for Knox County: MARK A. JOHNSON, Judge. Vacated and remanded with directions to dismiss.

John Thomas, Knox County Attorney, for appellant Joann Fischer.

Ryan D. Cwach, of Birmingham & Cwach Law Offices, P.L.L.C., for appellants Coburn Construction, L.L.C., et al.

Tracey L. Buettner, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Several board members of a sanitary improvement district filed a declaratory judgment action seeking a declaration of the proper construction and application of the election procedures in Neb. Rev. Stat. § 31-735(2)(b) (Reissue 2016). The district court held a trial and issued a declaratory judgment from which the plaintiffs below appeal. Because we conclude the plaintiffs failed to join indispensable parties, we vacate the judgment of the district court and remand the cause with directions to dismiss.

## BACKGROUND

In 1970, the district court for Knox County decreed the creation of Sanitary Improvement District No. 2 of Knox County, Nebraska (the SID). The SID currently includes both platted lots and unplatted areas. There are approximately 2,470 platted lots within the SID, which are not uniform in size. The total number of acres within the SID is unclear from the record. Our record shows there are several hundred landowners in the SID, and the parties generally agree that 27 landowners reside on the platted lots either full time or part time. The remaining lots and areas within the SID are described as vacant.

### Election Procedure for Board of Trustees

By statute, sanitary improvement districts in Nebraska are governed by a five-member board of trustees.[1] Only those who own real estate in the district, or those who are designated by entities owning real estate in the district, may serve on the

---

[1] See, Neb. Rev. Stat. § 31-733 (Reissue 2016); § 31-735(1).

board.[2] Section 31-735(2)(b) sets out the procedure by which the trustees are to be elected. That statute provides, in relevant part:

> [A]t the election held six years after the first election of trustees and at each election thereafter, three members of the board of trustees shall be elected by the legal property owners resident within such sanitary and improvement district and two members shall be elected by all of the owners of real estate located in the district pursuant to this section. If there are not any legal property owners resident within such district or if not less than ninety percent of the area of the district is owned for other than residential uses, the five members shall be elected by the legal property owners of all property within such district as provided in this section.[3]

Summarized, § 31-735(2)(b) establishes two categories of trustee: those elected by the "property owners resident" within the district and those elected by "all of the owners of real estate located" within the district. In another part of the statute, § 31-735(2)(b) provides that for those trustee positions elected by all property owners, the number of votes to which each owner is entitled generally depends on how much property they own in the district.

The record shows that since at least the early 1990's, the SID's board of trustees has been composed of three trustees elected by the resident owners and two trustees elected by all property owners. But in May 2019, the board of trustees was notified that pursuant to § 31-735, a different procedure would be followed for the election to be held in September 2019.

## Proposed Change to Election Procedure for Board of Trustees

Joann Fischer serves as the election commissioner of Knox County. In that capacity, Fischer is responsible for

---

[2] See § 31-735(1).

[3] § 31-735(2)(b).

facilitating the election process for the SID's five-member board of trustees. Generally speaking, this process involves determining how many votes each property owner is entitled to cast in the election, a decision which requires the commissioner to also determine how many trustee positions are to be filled by election of all property owners and how many are to be filled by election of resident owners only.

On May 14, 2019, Fischer sent a letter to the SID board of trustees. Fischer's letter stated that under § 31-735, the election procedure changes when "not less than ninety percent of the area of the district is owned for other than residential uses." Because Fischer had determined that more than 90 percent of the SID area consisted of "vacant lots," she advised the board that in the September 2019 election, all five trustees would be elected by all property owners; no trustee would be elected exclusively by resident owners.

After receiving Fischer's letter, the SID board of trustees passed a resolution authorizing the filing of a lawsuit to determine the proper construction and application of § 31-735. Thereafter, three trustees filed an action for declaratory judgment in the district court for Knox County. The same trustees also sought a peremptory writ of mandamus, which the district court denied, and from which no appeal was taken. We limit our factual discussion, and our related analysis, to only the declaratory judgment action.

## Declaratory Judgment Action

The complaint for declaratory judgment named as plaintiffs the "SID#2 of Knox County, Nebraska [as] a body corporate and politic of the State of Nebraska" and three of the SID's five trustees: Greg Blomberg, Jim Pelster, and Denny Tilton. The complaint alleged that Blomberg, Pelster, and Tilton were resident property owners and had been elected as trustees by the SID's resident property owners. The named defendants included Fischer, in her capacity as election commissioner, and three corporate entities alleged to be property owners within the SID whose rights "may be affected by these proceedings."

The complaint alleged that a controversy had arisen as to the proper interpretation of the language in § 31-735 requiring that all five trustees are to be elected by all property owners "if not less than ninety percent of the area of the district is owned for other than residential uses." Summarized, the complaint alleged that Fischer had erroneously construed § 31-735 and had incorrectly determined that more than 90 percent of the SID area was "owned for other than residential uses" based on the fact that more than 90 percent of the SID lots were vacant. The complaint alleged that certain covenants restricted the platted lots to "single family resident USES" and that therefore, "[t]he platted lots owned for residential uses encompass approximately 40% of the area" within the SID. The complaint alleged that Fischer's interpretation and application of § 31-735 would "deny the legal property owners resident their legal right to elect three members of the Board of Trustees." As relevant to the issues on appeal, the complaint prayed for a judicial declaration interpreting the phrase "owned for other than residential uses" in § 31-735(2)(b) and a declaration that the area of the SID "owned for other than residential uses" was less than 90 percent of the total land area of the SID.

Fischer and the corporate defendants filed separate answers. Fischer's answer expressly denied that she had acted improperly in changing the election procedure, and it alleged the procedural change was required by § 31-735 because "less than one percent" of the land within the SID was being used for residential purposes. Fischer's answer also suggested the covenants restricting platted lots to single family resident uses were unenforceable.

The corporate defendants filed a joint answer that generally agreed with Fischer's decision to change the election procedure. Their answer expressly alleged the restrictive covenants relied upon by the plaintiffs were no longer binding, and it also asserted several affirmative defenses, including that the complaint failed to include necessary parties.

Trial on the declaratory judgment was held in October 2019. One witness testified for the plaintiffs, and four

witnesses testified for the defendants. Several exhibits were received into evidence, but not all were included in our appellate record. The evidence adduced at trial generally comports with the facts set out above.

On November 21, 2019, the court entered a declaratory judgment finding generally in favor of the plaintiffs. The court reasoned that the restrictive covenants required platted lots within the SID, whether presently inhabited or not, to be used only for single family resident uses and that the "few lots owned for a public purpose" within the SID were not significant enough to constitute 90 percent of the area in the SID. Based on this reasoning, the court determined that less than 90 percent of the area of the SID was "owned for other than residential uses" within the meaning of § 31-735(2)(b) and that Fischer was wrong to conclude otherwise. The court ordered the next trustee election to be conducted "with the legal owners resident having vote eligibility for the three (3) Trustees of [the SID], and all legal owners having vote eligibility for the remaining two (2) Trustees of [the SID]."

All defendants timely appealed, and we moved this case to our docket on our own motion.[4]

ASSIGNMENTS OF ERROR

Fischer assigns, restated and consolidated, that the district court erred by (1) not applying a presumption of regularity to the election commissioner's official acts, (2) relying on provisions of recorded covenants to find that less than 90 percent of the area of the SID is owned for other than residential uses, and (3) refusing to receive an exhibit offered at trial.

The remaining defendants assign, restated and consolidated, that the district court erred by (1) relying on the recorded covenants to determine the percentage of SID area owned for other than residential uses; (2) holding that election commissioners should consider the contents of recorded easements, covenants, and restrictions when interpreting § 31-735(2)(b) to

---

[4] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2020).

the exclusion of other relevant factors; (3) requiring the election commissioner to consider the prospective use of a commercial developer's present ownership of land when applying § 31-735(2)(b); and (4) finding that less than 90 percent of the area in the SID is owned for other than residential uses.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[5]

## ANALYSIS

[2] This is a declaratory judgment action, and when declaratory relief is sought, it is a statutory requirement that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."[6] Our cases have generally described those who must be made parties as either "statutorily mandated necessary part[ies],"[7] "interested or necessary [parties],"[8] "significant necessary part[ies]"[9] or "necessary and indispensable [parties]."[10] But despite these differing phrases, it has long

---

[5] *Sandoval v. Ricketts*, 302 Neb. 138, 922 N.W.2d 222 (2019).

[6] Neb. Rev. Stat. § 25-21,159 (Reissue 2016).

[7] *Dunn v. Daub*, 259 Neb. 559, 564, 611 N.W.2d 97, 101 (2000).

[8] See, e.g., *Taylor Oil Co. v. Retikis*, 254 Neb. 275, 279, 575 N.W.2d 870, 873 (1998), citing *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991). See, also, *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 159, 505 N.W.2d 654, 660 (1993) ("[t]his court has held on numerous occasions that the statute authorizing declaratory judgments is applicable only where all interested and necessary persons are made parties to the proceeding").

[9] *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 497, 536 N.W.2d 56, 65 (1995), *disapproved on other grounds, Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

[10] See, e.g., *Taylor Oil Co., supra* note 8, 254 Neb. at 280, 575 N.W.2d at 874.

been the rule in declaratory judgment actions that the presence of such parties is jurisdictional and cannot be waived.[11]

[3,4] The rule in a declaratory judgment action, restated using the statutory language, is that all who have or claim any interest which would be affected by the declaration sought are indispensable parties,[12] and when all such parties have not been joined, the district court has no jurisdiction to determine the controversy.[13] Our cases have explained that a party is "indispensable" under this rule when the party "'has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest.'"[14]

It is apparent from our record that many of the landowners within the SID have not been joined as parties to this declaratory judgment action. We must therefore determine, as a threshold jurisdictional matter, whether all the landowners within the SID are indispensable parties in this declaratory judgment action.

## All Landowners Are Indispensable Parties

In *SID No. 57 v. City of Elkhorn*,[15] we described residents in a sanitary improvement district as indispensable parties to a declaratory judgment action seeking to enjoin the partial annexation of their district because such individuals

---

[11] See, e.g., *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014); *Dunn, supra* note 7; *Taylor Oil Co., supra* note 8; *Concerned Citizens, supra* note 8; *Shepoka v. Knopik*, 197 Neb. 651, 250 N.W.2d 619 (1977); *Redick v. Peony Park*, 151 Neb. 442, 37 N.W.2d 801 (1949).

[12] See § 25-21,159.

[13] See *Carlson, supra* note 11.

[14] *Dunn, supra* note 7, 259 Neb. at 563, 611 N.W.2d at 100, quoting *Taylor Oil Co., supra* note 8. See, also, *Concerned Citizens, supra* note 8.

[15] *SID No. 57, supra* note 9, 248 Neb. at 497, 536 N.W.2d at 65 (finding residents of SID "no doubt have an interest in the outcome of a declaratory judgment action seeking to enjoin the partial annexation of their sanitary and improvement district").

necessarily had an interest in the outcome of such action. We reach a similar conclusion here.

In this declaratory judgment action, the rights, status, and legal relations upon which a declaration is sought turn on how the voting rights under § 31-735(2)(b) are construed and applied to all property owners in the SID. Under the appellants' desired interpretation and application of § 31-735(2)(b), all property owners—resident and nonresident alike—would be entitled to cast votes for all five board positions, and the number of votes to which each owner is entitled depends generally on how much property they own in the district. As such, appellants seek a declaration that would reallocate majority control of the SID board of trustees from the 27 resident property owners to those owners with the most property in the SID.

Under the appellees' desired construction and application of § 31-735(2)(b), each of the 27 resident property owners in the SID would be entitled to cast ballots for three trustee positions, regardless of how much property each resident owns in the district. For the other two positions, all of the SID property owners are entitled to cast ballots, and the number of votes each owner is entitled to cast will depend upon how much property they own in the district. Thus, appellees seek a declaration interpreting and applying § 31-735 so that the resident property owners retain majority control of the SID board.

Given the nature of the declarations sought in this action, it is apparent that any declaration construing and applying § 31-735 to the voting rights within the SID will necessarily affect the voting rights and legal interests of every SID property owner. Because all of the property owners within the SID have an interest in the controversy such that the district court could not make a final determination without affecting their interests, all of the SID property owners are indispensable parties.[16] And while there may be circumstances under which it is possible to represent the interests of an indispensable party

---

[16] See, *Dunn, supra* note 7; *Taylor Oil Co., supra* note 8. See, also, *Concerned Citizens, supra* note 8.

in a representative fashion,[17] we see nothing in this record suggesting that any of the named parties purported either to bring or to defend this declaratory judgment action in any sort of permissible representative capacity.

Because the presence of all indispensable parties is jurisdictional in a declaratory judgment action and cannot be waived by the parties,[18] the district court had no jurisdiction to determine the controversy.[19] Therefore, we must vacate the district court's judgment for lack of jurisdiction and remand the cause with directions to dismiss.[20]

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand the cause with directions to dismiss the cause without prejudice for failure to join indispensable parties.

VACATED AND REMANDED WITH
DIRECTIONS TO DISMISS.

---

[17] See, e.g., *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). See, also, *Jack's Cookie Corporation v. Giles County*, 219 Tenn. 131, 137, 407 S.W.2d 446, 449 (1966), quoting Annot., 71 A.L.R.2d 723 (1960) (explaining several cases support conclusion that "'Uniform Declaratory Judgments Act will not preclude the bringing of a declaratory judgment action as a class action in which the parties appear by representation'"); *Lozoff v. Kaisershot*, 11 Wis. 2d 485, 489, 105 N.W.2d 783, 786 (1960) (construing declaratory judgment act's indispensable party requirement in conjunction with statute permitting class actions and explaining declaratory judgment statute "does not exclude the procedure of representative defense of the interests of a class from an action for declaratory relief").

[18] *Concerned Citizens, supra* note 8. See, also, *Carlson, supra* note 11; *Dunn, supra* note 7; *Taylor Oil Co., supra* note 8; *Shepoka, supra* note 11; *Redick, supra* note 11.

[19] *Dunn, supra* note 7; *Taylor Oil Co., supra* note 8.

[20] See *id.*